Abbe M. Goncharsky (ASB #22173)
**Abbe M. Goncharsky, PLLC**
6281 N. Oracle Rd. #35397
Tucson, Arizona 85740
Telephone: (520) 729-1400
Facsimile: (520) 729-1401
Email: abbe@amglawaz.com

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Perla Gonzales and Luis Gonzales,<br><br>    Plaintiffs,<br>v.<br>Borderland Construction Company, Inc.,<br><br>    Defendant. | NO: 4:21-cv-00139-DCB-LCK<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Assigned to Hon. David C. Bury and Hon. Lynnette C. Kimmins**<br><br>**(Oral Argument Requested)**<br>**(Jury Trial Requested)** |

  Pursuant to Federal Rule of Civil Procedure 56, Defendant Borderland Construction Co., Inc. ("Borderland") respectfully requests that the Court grant summary judgment in its favor on the sole claim made by Plaintiffs Perla Gonzales and Luis Gonzales ("Gonzales") in her Amended Complaint. [Doc. 26.] There are no genuine issues of material fact and Borderland is entitled to judgment as a matter of law.

  Borderland's Motion is supported by the following Memorandum of Points and Authorities and the separate Statement of Facts ("SOF").

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.  INTRODUCTION.

  The facts material to this Motion are not in dispute. Borderland values its employees and strongly believes in fair compensation. (SOF ¶ 10.) Borderland therefore

1

pays its Dispatcher, the position held by Gonzales during the relevant time period, their regular rate of pay for 40 hours a week for all weeks worked, even if the employee works less than that in the workweek. (SOF ¶ 4.) Borderland also directed Gonzales that she was to follow a fixed work schedule. (SOF ¶ 5.)

Gonzales now claims, absent any evidence or documents beyond her own unspecific testimony, that she estimates that she regularly worked ***eight hours*** of overtime each week during that same period, including by taking calls on her personal cell phone and working ***from home***. (SOF ¶ 6-8.) This is incredible, because prior to filing this lawsuit, Gonzales testified under oath that she ***did not work from home*** during her tenure as Borderland's Dispatcher. (SOF ¶ 123.) Gonzales further testified—also before filling this lawsuit— that she did not have permission to work from home, Borderland twice denied her requests to work from home, and Gonzales understood that she could be fired if she worked from home without permission. (SOF ¶ 123c and l.) And, Borderland had directed Gonzales by written policy not to use her personal cell phone for work purposes. (SOF ¶ 53-54.)

To the extent Gonzales now alleges that she worked overtime because she worked both outside the office and outside working hours, any such work was a decision that she made without Borderland's involvement, knowledge, or permission. (SOF ¶ 119.) Gonzales claims that she did not know that she was supposed to report any deviations from her work schedule to Borderland and therefore did not tell Borderland about any such work or time that she spent on the work. (SOF ¶¶ 127, 136, 165-166.) Gonzales' actions are irreconcilable, however, because she consistently notified Borderland of her requests to take paid time off. (SOF ¶¶ 65-69.)

As a matter of law, the facts material to Gonzales' claim are not disputed and she cannot prevail on her claim. Summary judgment for Borderland is proper.

## II.   SUMMARY OF FACTUAL BACKGROUND

Gonzales claims that Borderland, her then-employer, failed to pay her for all hours worked as required under the federal Fair Labor Standards Act, because she

worked overtime hours for which she was not paid. (SOF ¶ 1.) Gonzales' claim is based solely on her unsupported allegations that she worked in the office later than her scheduled hours and from her personal cell phone outside of her scheduled work hours. (SOF ¶ 6.) However, while Gonzales regularly reported her requests to take paid time off and otherwise expressed concerns to Borderland about her compensation, she never reported to anyone at Borderland that she worked any overtime. (SOF ¶¶ 127, 136, 165-166.) The material facts are not in dispute and established law does not support Gonzales' claim.

### A. Borderland Expects its Dispatcher to Work a Fixed Work Schedule and Report any Deviations to the Executive Administrative Assistant for Timekeeping Purposes.

Borderland is committed to compliance with federal and state employment laws, including the federal Fair Labor Standards Act and its governance of compensation of the company's non-exempt employees such as its Dispatcher. (SOF ¶ 9.) Borderland therefore follows a specific recordkeeping process for its Dispatcher, consistent with the FLSA and as summarized by the Department of Labor in its Fact Sheet #21. (SOF ¶ 11.)

Borderland schedules its Dispatcher to work 40 hours a week. (SOF ¶ 12.) Borderland specifically directs all non-exempt office staff, including the Dispatcher, not to work more than their scheduled work hours. (SOF ¶ 13.) Borderland also has denied requests by its non-exempt office staff, including the Dispatcher, to work from home. (SOF ¶ 14.) In relevant part, this is because the Dispatcher position is one that must be performed from the office for the sake of efficiency and recordkeeping. (SOF ¶ 15.)

### B. Borderland Hired Gonzales as its Dispatcher in September 2018.

In July of 2017, Borderland hired Gonzales through an agency to fill a vacant receptionist position. (SOF ¶¶ 16-17.) Borderland later offered her the position and Gonzales accepted. (SOF ¶ 19.) Less than a year later, Gonzales resigned. (SOF ¶ 20.)

In August of 2018, Borderland asked Gonzales if she would return to fill in for the receptionist for a few days. (SOF ¶ 21.) Gonzales agreed. (*Id*.) Shortly thereafter,

Borderland's dispatcher resigned and Borderland offered the position to Gonzales. (SOF ¶ 22.) While she did not have experience for the role, she had demonstrated a positive attitude as the receptionist and Borderland thought that she would learn the role quickly with training. (SOF ¶¶ 23-24.)

### C. If Gonzales Worked Outside Her Scheduled Hours, She Actively Concealed the Efforts from Borderland; The Few Times That Gonzales Ever Acknowledged to Any of Her Supervisors That She Was Working Outside Her Scheduled Work Hours, She Was Promptly Instructed Not to Do So and Borderland Confirmed She Had Been Paid for the Time Worked.

Borderland's employee Sally Salica trained Gonzales for the Dispatcher position. (SOF ¶ 25-26.) As Salica instructed Gonzales, Borderland expected that Gonzales, as its Dispatcher, would work her scheduled hours and not work more than 40 hours in a workweek. (SOF ¶ 26.) Gonzales must have understood that she was to work in the office; she testified multiple times that she did not work from home. (SOF ¶ 123b, c, k.) In fact, Gonzales testified that she asked Borderland twice for permission to work from home and was denied both times, and understood that she could be fired for working from home without permission. (SOF ¶ 123c, l.) And, Gonzales recognized that it was easier for the Dispatcher to be in the office, because even when she was only covering for the receptionist a few feet from her own office, she preferred to work from her desk rather than the receptionist's. (SOF ¶ 50.)

The Dispatcher position is an important role with a number of responsibilities for Borderland and its projects. (SOF ¶¶ 27-36.) Gonzales' supervisor and Borderland's VP, Elder and Salica grew concerned about the amount that Gonzales was out of the office, because it seemed she might not be working full-time. (SOF ¶ 104.) In September 2019, Salica and Coleman expressed to Gonzales that Gonzales needed to be using the shared calendar to indicate when Gonzales was going to be out of the office. (*Id.*) In response, Gonzales stated that she was working, but never told or even suggested to Salica or Coleman that she was working more than 40 hours in any workweek (let alone all of

them). (SOF ¶¶ 104-105.)

Gonzales then took maternity leave from October 2019 until January 2020. (SOF ¶ 106.) Gonzales testified that she received some calls from vendors and told them to call the office, but she did not tell anyone at the office about the calls. (SOF ¶ 108.) In contrast to Gonzales' descriptions in this lawsuit of her usual workdays as a Dispatcher, Salica covered the dispatch responsibilities during Gonzales' eight weeks of leave and did not receive any calls from vendors or others outside her normal working hours. (SOF ¶ 107.)

Borderland learned that Gonzales provided her personal cell phone number as the contact number for others such as trucking companies without notifying the company and contrary to the direction she received regarding the Dispatcher role. (SOF ¶ 139-140.) Her actions violated the company's cell phone policy, which prohibits use of personal cell phones during working hours. (SOF ¶ 53.) They also made it more complicated for Salica to cover dispatch if Gonzales was out of the office. (SOF ¶ 11.) Gonzales had acknowledged the cell phone policy in writing. (SOF ¶ 53.)

In March 2020, Gonzales notified Salica and Elder that she needed to leave the office early. (SOF ¶ 111-112.) After leaving the office, Gonzales texted Salica and Elder about a pave scheduled for the next day. (*Id*.) Although it was still within Gonzales' scheduled work hours, because Gonzales had left the office early when the pave was cancelled, Salica had already handled the dispatch calls. (*Id*.) Gonzales stated that the companies were calling her (on her personal cell phone), which only complicated the situation. (*Id*.)

Borderland (of course) made sure that Gonzales had been for the hours she had worked but not reported. (SOF ¶ 112.) Borderland also directed Gonzales again to only use the office phone (and not her cell phone) and to perform all work in the office to avoid confusion such as that with the trucking company. (SOF ¶ 112.) Elder and Salica both specifically told Gonzales that she *was not* to be working from outside the office.

5

(*Id*.) Gonzales knew from the experience, or should have known, that using her personal cell phone had the potential to seriously complicate communication with vendors, because Salica and the rest of the Borderland team were therefore outside the communication loop.

### D. Gonzales Resigned Her Employment in April 2020, Telling a Coworker that She was Going to Take Advantage of the Federal Pandemic Unemployment Assistance.

Gonzales resigned her employment with Borderland in April 2020. (SOF ¶ 124.) Gonzales told Borderland that she was resigning because she found another job that paid more than the Dispatcher job. (SOF ¶ 125.) At the same time, Gonzales texted a coworker that she was going to take advantage of the Pandemic Unemployment Assistance program. (SOF ¶ 126.) Regardless of the reason that Gonzales left Borderland, the critical material fact is clear and undisputed: Gonzales never reported to Borderland that she had worked hours for which she was not paid. (SOF ¶ 127.)

### E. Gonzales Testified to the Arizona Civil Rights Division in September 2020 That She Had Not Worked From Home.

As part of an investigation prior to Gonzales' filing this lawsuit, the Civil Rights Division conducted a telephonic interview of Gonzales, audio recording her sworn testimony. (SOF ¶¶ 122-123.) Gonzales testified clearly that she knew that she was not to work from home and stated multiple times under oath that she did not work from home. (SOF ¶ 123b, c, k.) She also testified that she twice requested to work from home and Borderland denied both requests. (SOF ¶ 123c, l.) When the investigator clarified whether Gonzales had worked from home without permission, Gonzales responded that she had not. (SOF ¶ 123k.) Gonzales also testified that she understood that had she worked from home without permission, Borderland could terminate her employment. (SOF ¶ 123c.)

6

Gonzales later filed this lawsuit, alleging that she worked various overtime hours on unspecified matters for which she was not paid. (SOF ¶ 1.) However, Gonzales' prior testimony significantly undercuts the claims that she now makes.

### III. BORDERLAND IS ENTITLED TO SUMMARY JUDGMENT ON GONZALES' CLAIM FOR UNPAID OVERTIME.

Summary judgment is appropriate when, as here, the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp,*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The facts material to Gonzales' claims are not in dispute, except to the extent that Gonzales has contradicted her own sworn testimony. The undisputed facts demonstrate that Gonzales cannot establish the essential elements of her claim for unpaid overtime. Indeed, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Regardless of what other facts Gonzales may dispute or even prove, and notwithstanding any other arguments she may make, Borderland is entitled to summary judgment in its favor as a matter of law.

Gonzales' claim fails as a matter of law. While she is correct that the FLSA requires that employers must pay employees overtime wages of one and one-half times their regular rate of pay for each hour worked more than 40 hours during a week, 29 U.S.C. § 207(a)(1), there is more to the Court's inquiry. To prevail on her FLSA claim, Gonzales bears the burden of proving that: (1) Borderland was an employer under the FLSA; (2) Gonzales was an employee under the FLSA; (3) Gonzales worked overtime; and (4) she was not paid overtime for overtime hours worked. *Rogers v. Brauer Law Offices, PLC,* 2012 WL 426725, at *3 (D. Ariz. Feb. 10, 2012). Borderland does not

7

contest the first two prongs. However, as a matter of law, Gonzales cannot establish either the third or fourth prongs of the test.[1] She did not work overtime and she was paid for all hours that she worked.

### A. Gonzales Cannot Meet Her Burden to Establish a Claim for Hours Worked from Home When She Testified That Borderland Denied Her Requests to Work From Home.

In her Amended Complaint, Gonzales claims that she "regularly performed work even when she wasn't in the office, including taking calls from Defendant and making calls to suppliers to place an order or cancel an order." [Doc. 26, ¶ 35.] However, Gonzales' claim is not only unsupported by the facts, as discussed below; ***Gonzales' claim is contradicted by her own sworn testimony*** before the Arizona Attorney General's Office, Civil Rights Division that she did not work from home. (SOF ¶ 123.) While Gonzales attempts to create a factual dispute by her own testimony, or otherwise presents contradictory testimony, summary judgment for Borderland is proper.

---

[1] Borderland anticipates that Gonzales will argue that it failed to keep adequate records and the *Mt. Clemens* burden-shifting framework applies, such that Gonzales "must only (1) prove that [s]he has in fact performed work for which [s]he is owed overtime, and (2) produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 964 (D. Ariz. 2020) (quoting *Mt. Clemens*, 328 U.S. at 687.)

Borderland's records comply with the standards set forth by the FLSA. As the U.S. Department of Labor states in its Fact Sheet #21:

> Many employees work on a fixed schedule from which they seldom vary. The employer may keep a record showing the exact schedule of daily and weekly hours and merely indicate that the worker did follow the schedule. When a worker is on a job for a longer or shorter period of time than the schedule shows, the employer must record the number of hours the worker actually worked, on an exception basis.

Borderland's process allowed just this. (SOF ¶¶ 11, 26, 61-64.) *Mt. Clemens* does not apply.

8

Courts in the Ninth Circuit have long held that plaintiffs cannot avoid summary judgment by creating contradictions via their own testimony. In *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir. 1975), for example, the plaintiff offered multiple sworn statements to contradict his earlier sworn testimony and support his opposition to the defendant's summary judgment motion. The Ninth Circuit found that the only material issues of fact were created by the contradictions between the plaintiff's deposition and his subsequent affidavits and granted the defendant's motion for summary judgment. *Id.* at 543-44 (plaintiff could not use own contradictory testimony to create fact dispute where on dispute resulted from necessity of choosing between plaintiff's two competing versions)." This is the situation in the case at bar.

### 1. By Gonzales' Own Testimony, Borderland Did Not Allow Her to Work from Home and She Did Not Work from Home.

Gonzales testified under oath before the Civil Rights Division that she was not authorized to work from home and did not work from home. (SOF ¶ 123.) She specifically testified that her two requests to work from home were both denied. (SOF ¶ 123c, l.) She also acknowledged in her sworn testimony that had she worked from home without permission, she would have expected to be fired. (SOF ¶ 123c.) Gonzales' own sworn testimony cannot be reconciled with the claims that she now makes in this lawsuit, including her subsequent deposition testimony in this matter that she took phone calls from home on her personal cell phone beyond her scheduled work hours. (*See, e.g.*, SOF ¶¶ 100-103, 139-143.) This does not, however, create a factual dispute and defeat summary judgment.

The Court should disregard Gonzales' deposition testimony to the extent that it contradicts her prior sworn statements to the Civil Rights Division. *See Foster v. Arcata Assoc., Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985), *overruled on other grounds by Kennedy v. Allied Mut. Ins. Co,*, 952 F.2d 262 (9th Cir. 1991) (court considered only deposition testimony when subsequent affidavit was contradictory). As Gonzales

9

acknowledged under oath, Borderland did not authorize her to work from home and she did not work from home. (SOF ¶ 123.) To the extent that Gonzales now claims that she worked overtime because she took telephone calls from outside the office and outside scheduled work hours, her claim contradicts her own original testimony. Regarding overtime based on telephone calls, Gonzales' claim fails as a matter of law.

### 2. Gonzales Provides Only Vague, Non-Specific Claims About Work She May Have Done Outside the Office and Potentially Outside Work Hours, But Also Acknowledges That She Would "Make Up" Hours if She Arrived Late, Left Early, or Was Gone During the Workday.

Gonzales cannot establish any specifics to support her claim that she was working more than 40 hours in a workweek in the office, outside her scheduled working hours. Gonzales has the burden of proving that she performed work for which she was not properly compensated. *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986); *Rogers*, 2012 WL 426725, *4. "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of a just and reasonable inference*." *Brock*, 790 F.2d at 1448 (emphasis in original). Such is not the case here. As a matter of just and reasonable inference, Gonzales has not shown that she performed any work outside the 40 hours for which she was already paid, let alone the amount and extent of that work.

At most, prior to her conflicting deposition testimony in this matter, Gonzales had previously testified that she did not work from home without permission, and that she only took some phone calls for the "convenience" of those on the other end of the call. (SOF ¶ 123j.) Gonzales' dismissive attitude about the time spent on the call is insightful: if she was, in fact, on such telephone calls, she clearly considered the time she spent to be *de minimis*. Accordingly, Gonzales' claim falls under the general rule that "employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). As the Supreme Court

10

has stated, "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded[, for] [s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]." *Mt. Clemens*, 328 U.S. at 692.

Even if Gonzales can reconcile her conflicting sworn testimony, she cannot establish (by anything other than her now-conflicting, self-serving testimony) either that the calls were more than *de minimis* or that she worked more than 40 hours in a workweek. Gonzales bases her claim for unpaid overtime wholly upon her own imprecise and unspecific testimony, more than two years after the fact, that she worked in excess of 40 hours in a workweek because she took phone calls on her personal cell phone from outside the office and that she stayed in the office after her scheduled work hours. (SOF ¶¶ 139-144.) She "estimates" that she worked eight hours of overtime each week, except those in which she took paid time off, but she cannot identify with particularity how she reaches that calculation. (SOF ¶¶ 159-176.) Gonzales' broad-based estimate that she worked eight hours of overtime every week of her tenure, absent more, is insufficient to establish a claim for unpaid overtime.

At most, after disregarding Gonzales' conflicting testimony about working from home, Gonzales has established that there were days on which she worked in the office beyond her scheduled work hours. However, Gonzales also testified that she did so regularly to "make up" time that she missed during her scheduled work hours, but she cannot attribute how many of the times she stayed late in the office were to "make up" work time for which was absent earlier in the day or week, and which she did not report to Borderland despite its recordkeeping processes. (SOF ¶¶ 89-91, 123f, 173.)

Gonzales' conclusory allegations and unspecific estimates about her work efforts simply do not create an issue of fact. *See, e.g.*, *Viet v. Le*, 951 F.3d 818 (6th Cir. 2020); *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014). Gonzales has merely estimated that she worked eight hours of overtime each workweek in which she did not

take any paid time off. (SOF ¶¶ 159-183.) Gonzales has therefore failed to provide evidence showing how many hours she worked "during any particular week" and has thereby failed to create a genuine issue of fact. *Rogers*, 2012 WL 426725, *6 (granting motion for summary judgment). Under the circumstances, Borderland is entitled to summary judgment in its favor on her overtime claim.

### B. Borderland is Not Responsible for Paying Overtime for Work that it Did Not Suffer or Permit Gonzales to Perform.

Even assuming, *arguendo*, that Gonzales satisfies the Court that she can adequately establish the amount and extent of overtime worked as a matter of just and reasonable inference before the trier of fact, the Court's inquiry does not end there. By her actions, Gonzales denied Borderland the opportunity for either constructive or actual knowledge, and now claims that because of that, Borderland must pay her. However, "[t]h(e) element of constructive of (sic) actual knowledge is especially significant in a case ... in which an employee deliberately acted in such a way to prevent his employer from acquiring knowledge of his alleged uncompensated overtime hours." *Davis*, 792 F.2d at 1277 (citing *Forrester*, 646 F.2d at 414-15). Borderland can clearly establish that it does not owe Gonzales for the hours worked because, by her own testimony, it twice denied her request to work from home and Gonzales acted in such a way that Borderland neither knew or should have known of the work that Gonzales allegedly performed after her scheduled work hours. With the facts at bar, Borderland should be granted summary judgment, not required to pay overtime for hours it did not authorize and not and should not have known about.

As addressed above, Gonzales' own testimony is that she was not working from home and that Borderland denied her requests to work from home. (SOF ¶ 123.) Any statements that she now makes to the contrary should be disregarded. However, even if the Court chooses to consider them, Gonzales still did not report any hours that she now claims to have worked outside her scheduled work hours and did not report that she was working from outside the office (even after she was told not to do so). (*See, e.g.,* SOF ¶

12

136.) Whether intentional or not, Gonzales' actions misled her supervisors and Borderland at a minimum. *See Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). As a matter of law, summary judgment is proper for Borderland because Gonzales is not entitled to compensation for any overtime work that she allegedly performed but concealed from the company. *See id.*

An employer "employs" others under the FLSA if it "suffer[s] or permit[s]" employees to work, meaning that the employee works "with the knowledge of the employer." 29 U.S.C. § 203(g); *Forrester*, 646 F.2d at 414. In other words, "an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of [FLSA] § 207." *Id.* However, where, as here, "an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation [of the FLSA]." *Id.*

Even if Gonzales did work more than 40 hours in a workweek, Gonzales did not provide Borderland any way by which it would have known or should have known that she was working more than her scheduled work hours. (SOF ¶ 163-168.) The undisputed material facts are clear that Borderland denied Gonzales' requests to work from home and instructed her not to use her personal cell phone for work purposes. (SOF ¶ 123.) Borderland also reminded and instructed Gonzales on numerous occasions that she was not to work outside her scheduled work hours and that she did not need to take calls during paid time off. (SOF ¶¶ 93-94.) Despite these directions, Gonzales acted to prevent Borderland from knowing that she was working outside her work schedule and the office. (SOF ¶ 134-146.)

Borderland has met its burden, because Gonzales' actions in this case dramatically resemble those of the employee in *Forrester*. In *Forrester*, the employer's officials stated in affidavits that they had no knowledge that Forrester had been working uncompensated overtime hours. 646 F.2d at 414. Forrester himself testified at his

deposition that he "did not mention any unpaid overtime work to any store official prior to filing his complaint." *Id*. The trial court therefore concluded that Forrester did not raise a genuine issue of material fact concerning whether any official of Roth's should have known about his alleged uncompensated hours and the Ninth Circuit agreed. "[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay overtime hours is not a violation of § 207." *Id.*

Like the employer's officials in *Forrester*, Borderland's representatives have stated in sworn declarations that they had no knowledge that Gonzales worked uncompensated overtime hours. (SOF ¶ 119.) Gonzales herself testified at her deposition that she doesn't remember telling any of the Borderland representatives that she had worked unpaid overtime. (*See, e.g.*, SOF ¶¶ 155, 163-166.) In fact, she does not remember telling anyone at Borderland that she was working from outside the office or outside her scheduled work hours. (*Id*.) At no time did Gonzales report to anyone in Borderland management that she believed she was not being properly compensated for her hours worked. (SOF ¶ 127.) Gonzales was aware of the process by which she was to report deviations from her work schedule to Coleman, but did not report any time that she worked outside the office or outside her scheduled work hours. (*See, e.g.,* SOF ¶ 28.) Even when Salica and Elder expressed concern that she was not working enough, she did not tell them that she was working from outside the office or outside her working hours. (*See, e.g.,* SOF ¶ 88-91, 104-105.) She responded only that she received calls from others after her scheduled work hours, which could have meant that she received messages that she returned the next day. (SOF ¶ 104-105.) Gonzales' acts specifically prevented Borderland from acquiring knowledge if she was working from outside the office or during working hours. *Cf. Forrester*, 646 F.2d at 414.

Accordingly, just as in *Forrester*, Gonzales cannot raise a genuine issue of material fact concerning whether any official of Roth's should have known about her alleged uncompensated hours. 646 F.2d at 414. In her own words, Gonzales chose to do any work outside the office or outside her scheduled work hours "for convenience." (SOF ¶ 123j.) This is not a question of Gonzales asking the Court to order unpaid wages based on imprecision and speculation arising from Borderland's failure to keep records as required by the FLSA. *Cf. Brock,* 790 F.2d at 1448. Rather, Borderland's representatives specifically told Gonzales that she was to work only her scheduled work hours, that she was not to work more than 40 hours in a workweek, and that she was to report variances from her fixed work schedule to Borderland's Executive Administrative Assistant. (SOF ¶ 26.) That there are no records of any work performed by Gonzales outside her scheduled working hours and outside the office is a result of Gonzales' decisions not to report any such hours. (*See, e.g.,* SOF ¶ 123j.) To the extent that Gonzales claims to have suffered a loss of wages, her claim is unsupported by the facts and fails as a matter of law.

Borderland paid Gonzales in full for all hours it knew or should have known that she worked. Gonzales' claim fails as a matter of law.

### IV. CONCLUSION.

As a matter of law, Gonzales cannot establish her claim for unpaid overtime. She cannot prove that she worked with her employer's knowledge or direction. To the contrary, she has acknowledged by her sworn testimony that she knew she was not permitted to work from home, did so anyway, and decided not to report it. She also cannot establish the amount of her damages as a matter of just and reasonable inference, because her estimates are not based on anything specific.

Gonzales is not entitled to any damages arising from her Amended Complaint. Borderland respectfully requests that this Court enter summary judgment in its favor.

RESPECTFULLY SUBMITTED this 23rd day of February, 2022.

                                  **ABBE M. GONCHARSKY, PLLC**

                                  /s/ Abbe M. Goncharsky
                                  By Abbe M. Goncharsky
                                  *Attorney for Defendant*
                                  *Borderland Construction Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Marshall Hunt
Davis Miles McGuire Gardner, PLLC
40 East Rio Salado Pkwy, Suite 425
Tempe, Arizona  85281

Courtney Lowery
Josh Sanford
Sanford Law Firm
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas  72211
*Attorneys for Plaintiffs*

   /s/ Abbe M. Goncharsky_____