Abbe M. Goncharsky (ASB #22173)
**Abbe M. Goncharsky, PLLC**
6281 N. Oracle Rd. #35397
Tucson, Arizona 85740
Telephone: (520) 729-1400
Facsimile: (520) 729-1401
Email: abbe@amglawaz.com

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Perla Gonzales and Luis Gonzales,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>Borderland Construction Company, Inc.,<br><br>　　　　　　　　Defendant. | NO: 4:21-cv-00139-DCB-LCK<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**Assigned to Hon. David C. Bury and Hon. Lynnette C. Kimmins**<br><br>**(Oral Argument Requested)**<br>**(Jury Trial Requested)** |

Pursuant to Federal Rule of Civil Procedure 56, Defendant Borderland Construction Co., Inc. ("Borderland") replies in support of its Motion for Summary Judgment ("Motion"). [Doc. 42] Although Gonzales asserted arguments in both her Response to Motion for Summary Judgment ("Response") and her Response to Defendant's Statement of Facts in Support of its Motion for Summary Judgment ("SOF Response"), Local Rule 56.1 only allows substantive argument in the Response. *See* Doc. 44 and 45. Accordingly, Borderland replies to the Response.

This lawsuit is entirely based on Gonzales' inaccurate beliefs about what the Fair Labor Standards Act ("FLSA") requires of an employer. As a matter of law, there are no genuine issues of material fact. Borderland has satisfied all of its relevant obligations with respect to Gonzales and the FLSA and is entitled to summary judgment.

1

## I. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT.

Gonzales must raise a genuine issue as to a material fact to avoid summary judgment. *See* Fed. R. Civ. P. 56(a). To dispute a statement of fact, Gonzales, as the non-moving party, must (1) make "a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed"; and (2) identify "any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party." LR Civ. 56.1(b). In addition, "[e]ach additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support." *Id.* Gonzales should also cite to the "specific paragraph in the statement of facts that supports assertions made in the memorand[um of law] regarding any material fact on which [she] relies in… opposition to the motion." LR 56.1(e).

In other words, Local Rule 56.1 sets important, straightforward parameters to allow the Court to readily determine <u>if there are disputes as to the material facts</u>.

> [LR 56.1(b)] requires the controverting party to provide a specific record reference supporting the party's position if a fact is disputed; it does not permit explanation and argument supporting the party's position to be included in the response to the moving party's statement of facts. Argument may be made in the response or reply brief on the motion for summary judgment, but within the page limits.

*Pruett v. Arizona*, 606 F.Supp.2d 1065, 1075 (D. Ariz. 2009). A court may disregard everything in a non-moving party's controverting statement of facts except the word "admitted" or "disputed" and the corresponding references to the record. *Hunton v. Am. Zurich Ins. Co.*, 2018 WL 1182252, *3 (D. Ariz. 2018).

Gonzales admits in whole or relevant part the majority of the facts set forth in the SOF, rendering them undisputed. (SOF Response ¶¶ 1-3, 5-8, 12, 16, 18-23, 26-27, 30, 35-37, 40, 50-51, 58, 65-67, 69, 71-73, 76-80, 84-86, 88-92, 96-99, 101-103, 106, 108, 116-118, 120-127, 135-136, 139-146, 151-155, 157-169, 171-176, 178-179, 181, 184, 187.) However, Gonzales' SOF Response fails to meet the expectations of Local Rule 56.1 and thereby complicates the consideration of Borderland's Motion. In much of the

SOF Response, Gonzales does not simply agree or disagree and present controverting facts. Instead, she takes three different approaches.

First, Gonzales presents legal and other arguments outside the scope of factual allegations, including assertions of immateriality of the SOF. (SOF Response at ¶¶ 9-10, 24-25, 28-29, 31-34, 37, 41-49, 53-57, 59, 61-63, 68, 70, 75, 81-87, 93-95, 97, 99, 104-105, 107, 109-115, 119, 123, 125-127, 129, 131, 133-134, 147-150, 155-156, 160, 163-165, 174, 177-178, 180-188.) However, any legal or other argument in the SOF Response is not permitted and should be disregarded. *See* LR 56.1; *see also Hunton*, 2018 WL 1182252 at *3. Moreover, Gonzales' immateriality arguments wholly disregard Borderland's position that it neither knew nor should have known that Gonzales was allegedly working more than 40 hours in a workweek, for which she now claims to be due overtime. (Motion, pp. 12-15.) Accordingly, even where Gonzales claims that facts are immaterial, she fails to create a *triable* issue of material fact.[1] Gonzales' arguments set forth in the SOF Response, including regarding materiality, should be disregarded as outside the scope (and page limit) set by the applicable Rules.

Second, Gonzales admits certain of the SOF and then provides additional facts support of her admission. (SOF Response at ¶¶ 1, 7-8, 12, 15, 17, 26, 30, 35-36, 38, 44, 52-53, 69, 73, 78, 80, 90-92, 97, 99-100, 111, 120-121, 123, 135-136, 139, 143-144, 166-167, 179, 185.) However, she did not provide these additional facts "in a separately numbered paragraph" and, in some instances, does not refer to "a specific admissible portion of the record where the fact finds support." LR 56.1(b). Because none of these are "additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party," these facts may be disregarded. *See* LR 56.1.

---

[1] LR 56.1 requires that the moving party set forth in the original statement of facts only the material facts but prohibits the filing of a reply statement of facts. As a practical matter, this requires that the moving party anticipate the material facts that could be required to address in the Reply the non-movant's response and any concerns identified in the non-movant's controverting statement, without providing extraneous information. This is a delicate balance for the moving party, and one that Borderland worked carefully to meet for purposes of its Motion and this Reply.

And third, Gonzales purports to dispute certain facts, but fails to provide the requisite support. (Response at ¶¶ 4, 9-11, 26, 44-49, 54-56, 59, 61, 75, 81-87, 94, 104, 107, 109-115, 119, 123, 127-130, 134, 136, 137-138.) This includes references to Gonzales' testimony to the Arizona Attorney General's Office, Civil Rights Division (which Gonzales refers to as the "Equal Employment Opportunity Commission"), for which Gonzales only cites to presumably the relevant beginning of the excerpt. Without any indication of the full relevant excerpt, and given that Gonzales testified regarding multiple subjects, Borderland and the Court cannot determine whether the assertions have factual support in the context of Borderland's Motion.

While Borderland appreciates the practical challenges of Local Rule 56.1, Gonzales has not referred to specific admissible portions of the record supporting facts she claims to be disputed, identified additional facts (with citation) that establish a genuine issue of material fact, or set forth each additional fact in a separately-numbered paragraph. Gonzales thereby deprives Borderland of a clear and concise way to address in this Reply any material facts that she alleges are in controversy.[2] Accordingly, this Court may disregard portions of the SOF Response.[3] *See* LR 56.1.

---

[2] Should the Court decide to consider arguments set forth in the SOF Response, Borderland respectfully requests leave to file a Reply thereto.

[3] Exhibit A attempts to illustrate by strike-through and color-coding the SOF Response sections that this Court may find do not comply with Local Rule 56.1(b):
- The black strike-throughs (no underlining) identify the arguments discussed above, which are only proper in the Response (within the page limits).
- The red strike-throughs (with underlining) identify factual allegations that (a) are not set forth in a separately-numbered paragraph and lack reference to the specific admissible portion of the record or (b) fail to present a controverted statement of fact from the SOF, such as where Gonzales admits the SOF and then presents additional facts or denies facts not stated in the SOF.
- The blue strike-throughs (with squiggly underlining) identify alleged factual disputes for which the record citation does not support the alleged fact. (For example, in response to SOF ¶ 4, Gonzales does not identify any dispute but states that she "denies" the allegation and asserts that her pay was deducted if she worked less than 40 hours. This is immaterial to the Motion, but also misleading, because Gonzales' pay records show that Borderland paid her the same amount

Moreover, and perhaps most telling, even if the Court considers Gonzales' SOF Response as filed, Gonzales fails to identify a single genuine issue of material fact, but instead bases her assertions on her own perceptions, rather than actual facts in the record. *See* SOF Response. Every fact properly on the record in this case supports the conclusion that Borderland complied with its obligations to Gonzales under the FLSA. Gonzales' statements, absent more, cannot create a genuine issue as to any material fact. *See, e.g., FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

## II. THE UNDISPUTED MATERIAL FACTS SHOW THAT BORDERLAND DID NOT KNOW AND SHOULD NOT HAVE KNOWN IF GONZALES WAS WORKING OVERTIME.

Considering the case law set forth in the Motion, the undisputed material facts clearly establish that Borderland did not know and should not have known if Gonzales was working more than 40 hours a week. While Gonzales claims that she worked an estimated eight hours a week during her tenure as Borderland's Dispatcher, she also claims she did not report that she was working beyond 40 hours in a workweek. This is because she mistakenly believed she would not be paid for her time based on a single conversation of years prior. While Gonzales attempts to claim that Borderland did not have the requisite processes in place to defeat her FLSA claim and that she was told not to report her time if she worked more than 40 hours in a workweek (Response p. 6), she fails to provide any factual or legal support for these claims. Accordingly, summary judgment is proper for Borderland.

Gonzales very clearly testified that she was told that "overtime was not available" with respect to her former position as Borderland's Receptionist. (SOF ¶ 137.) This is irrelevant, however, because she further testified that she never asked about overtime

---

every week she was the Dispatcher except when she took maternity leave. *See* Exhibit 8 (September 2018-April 2020). Similarly, Gonzales "denies" SOF ¶ 11, but in her cited testimony, she clearly states that she was to report her hours and that she did not ask what she was supposed to do if she worked more hours than 40 in a workweek. (SOF ¶ 136.)

5

regarding the Dispatcher position. (*Id.*) Gonzales' testimony on this point is consistent with that of Borderland's representatives:[4] Borderland did not expect that Gonzales would *work* over 40 hours a week such that she wouldn't be paid overtime. Borderland did not mean to say that Gonzales wouldn't be paid overtime if she worked (and reported) over 40 hours in the week. As such, Gonzales' testimony does not create a material issue of fact, because the parties' testimony can all be reconciled.

Gonzales also claims that Borderland was "adamant" that Gonzales was not to work less than 40 hours, alleges that leadership should have known she worked extra hours because there was a window in her office through which other employees could see her working extra hours, she received work-related requests from other employees (the project managers and field supervisors it was her role to support), and submits she received work-related calls outside her work hours on her personal cell phone after she chose to distribute that phone number.[5] Gonzales also asserts that she "worked through her lunch break or stayed after her regular work hours" to "make up" for her missed time. (Response, pp. 6-7.) Gonzales even claims incongruously that Salica saw her working extra hours but "harassed" her about making up for her time out of the office. (*Id.* at lines 17-22.)[6] Notably, the conversation from which Gonzales claims

---

[4] Gonzales' criticism of Borderland's use of sworn statements by employees who have not been deposed ignores that it was her choice not to depose any of Borderland's witnesses during the parties' discovery efforts. [*See* Docket.]

[5] Perhaps ironically, to the extent that the Court considers Gonzales' SOF Response ¶ 150, Gonzales herself recognizes that she cannot know what others saw (or didn't see), stating "Plaintiff does not have the requisite knowledge to admit or deny what Mr. Elder did or did not see in any circumstance." Gonzales also claims that Elder "would have no way of knowing when Plaintiff began her day to know whether she stayed past the end of her shift or not." *Id.; see also* SOF Response ¶¶ 177, 180.

Moreover, perhaps in an effort to create a disputed—albeit immaterial—fact, it appears that Gonzales has confused Elder's role with that of project managers in the field. *See* SOF Response ¶ 150. Elder is Borderland's Vice President and was Gonzales' supervisor, not a project manager in the field. *See* SOF, Exhibit 3.

[6] Although Gonzales claims that Salica was Gonzales' supervisor, it was Elder, not Salica, who supervised Gonzales in the Dispatcher position. (SOF ¶ 29.)

6

"harassment" occurred in September 2019, a year into Gonzales' tenure as Dispatcher. (*See* SOF ¶ 104.) Gonzales does not explain why she had any belief prior to then that she was to work exactly 40 hours, nor could she. And presumably Gonzales would have mentioned working 48 hours a week at the time Salica spoke to her, but she did not.

None of the material facts warrant denial of the Motion. Gonzales cannot identify anyone in Borderland leadership who supports her assertion that leadership "knew" that she was working extra hours as compared to working to "make up" time that she did not work due to personal conflicts. *Cf. Schuler v. Chronicle Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (in ADA context, subjective personal judgments do not raise genuine issue of material fact). Nor do "last-minute" requests from employees other than Gonzales' direct supervisors equate to a requirement that Gonzales work overtime. Even if leadership had seen Gonzales working, and even if others asked Gonzales for assistance with projects late in her workday (or by telephone thereafter), there is no reason leadership would or should have known that she was working any overtime without Gonzales letting the company know the hours that she was allegedly working.

**A. While Gonzales Apparently Does Not Like Borderland's Hours-Reporting Process, Borderland's Process Complied with the FLSA.**

Gonzales misreads the obligations placed on an employer by the FLSA and, in turn, the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 348 U.S. 680, 686-88 (1946). In fact, neither *Anderson* nor the jurisprudence of the Ninth Circuit to date support Gonzales' position. For example, Gonzales does not claim that she was pressured to not report her time like the employee in *Manuel v. Quest Diagnostics*, 341 F.App'x 348, 349 (9th Cir. 2009). Instead, Gonzales' testimony is consistent (at least in this regard) and clear: She believed, based on a single conversation and without

---

Regardless, Gonzales' testimony is clear: She did not report to either Elder or Salica that she was allegedly working more than 40 hours in a week. (SOF ¶¶ 129, 149.) While Gonzales *believes* that Elder would have known that she was performing work outside the office because she told him about projects she had handled outside working hours, her belief ignores such facts as that she would "make up" time missed due to doctors' appointments and for other reasons and is, in any event, not a fact. (SOF ¶¶ 147-150.)

7

confirmation, that she was not going to be paid for overtime hours worked, and so alleges to have chosen to work and not report an extra eight hours each week (except those in which she took paid time off). And *Lillehagen v. Alorica, Inc.*, 2014 WL 6989230 (C.D. Cal. 2014), does not represent a similar fact scenario as the case at bar and is not precedential. As Gonzales acknowledges, the *Lillehagen* managers "were responsible for the general monitoring of [the plaintiffs'] day-to-day activities." (Response, p. 13.) Gonzales does not even claim that the same was true of her managers.

In fact, Gonzales' case does not resemble any of the law she has cited. While it is true that the court in *Ader v. SimonMed,* 465 F. Supp.3d 953 (D. Ariz. 2020), states that it appears the Ninth Circuit has adopted "a more relaxed approach" than other circuits, the block quote included in Gonzales' response makes clear that statement is related to the specificity of the evidence the employee must provide. (Response, p. 5.) The Ninth Circuit quote does not support, or even suggest, that the employer is solely responsible for all FLSA-related recordkeeping, even where (as here) the employee fails to provide information to the employer to allow for such recordkeeping.

There is also no support for Gonzales' allegation that Borderland expected her to finish assignments when they were given and respond to phone calls when they were received. (Response, p. 14.) Gonzales agrees that while she served as Borderland's Dispatcher, Salica covered the duties when she was out of the office, and otherwise does not contest the fact that Borderland designated Salica to provide assistance when the Dispatcher needed to be away from the office during the day or otherwise needed backup, including during Gonzales' maternity leave. (SOF ¶¶ 37; 107.) However, Gonzales cannot say how Salica would have responded if Gonzales asked for assistance with the requests Gonzales received on her cell phone, because Gonzales did not ask. *See, e.g.* SOF ¶ 108.

Gonzales' attempt to ascribe responsibility to Borderland because she was allegedly working outside her scheduled work hours is based on unsupported assertions such as her misinterpretation of Borderland's SOF 153. (Response, p. 11.) The

preceding Statements of Fact reflect Gonzales' testimony that she had allegedly worked outside of her scheduled hours, and the paragraph in question uncontrovertibly states in full that, with respect to requests that Gonzales claims to have received outside of her scheduled work hours, "Gonzales did not tell the project managers and supervisors that she was not at work when they called her 'after work' and does not know why she did not tell them." (SOF ¶ 153.) Gonzales chose to provide her personal cell phone number to her coworkers, despite Borderland policy to the contrary. (SOF ¶¶ 139, 53.) Gonzales' then-coworkers (who worked different schedules than Gonzales) then called that number when they had business needs. Gonzales herself has testified that she did not tell them that she was not at work, did not report the calls to her supervisors, and did not ask her supervisors how to handle what she considered to be "last minute" or "urgent" requests. (*See, e.g.,* SOF ¶¶ 153, 155.) However, Borderland had acted properly under the FLSA, including telling Gonzales to work her hours as scheduled, that she was not approved to work from home, and that backup would be provided by Salica. (SOF ¶ 13, 117, 123(a).) Borderland also did not give Gonzales remote access to her email. (SOF ¶ 121.) That Gonzales can complain about alleged calls is solely a result of her having provided her personal cell phone number to other for business-related reasons, against company policy.

Gonzales' criticism that Borderland "did not keep contemporaneous timesheets" of the hours she allegedly worked ignores that Borderland could not have done so because Gonzales did not report the hours she now alleges to have worked. (Response, p. 9) This circular argument is nonsensical at best. The FLSA cannot be read to require employers to somehow divine when employees are working without at least some information from the employee about the work allegedly performed. Gonzales did not report telephone calls and other work efforts outside her scheduled and "make up" hours and, in fact, has not provided any records of any such telephone calls in the time since.

Employees throughout Borderland and, indeed, companies throughout the State of Arizona end each scheduled workday with more work to be completed. That Gonzales

9

alleges to have chosen to continue to work, without either advance or retroactive permission or authority, because she believed that the work needed to be completed right then does not, cannot, and should not render Borderland liable to compensate her for those unreported hours that she now claims to have worked. Hyperbole notwithstanding, it appears that Gonzales understands this premise, because she states in her Response: "According to Defendant's logic, it was Plaintiff's responsibility to leave work incomplete, turn down projects, or pawn her work off on a co-worker the second she hit eight hours in a day." (Response, p. 13.) Even the FLSA does not expect an employer to know to the second how much an employee has worked. Otherwise, however, what Gonzales states is wholly accurate and the logic of employers nationwide: In a world of 24 hour a day/7 day a week efforts and personal cell phones from which business can be directed at any time and from anywhere, companies like Borderland must and do rely upon their employees to follow clear policies and expectations. The same is true, for example, with doctors' offices and law firms, where certain employees may work around the clock, while other employees are expected to only work as scheduled.

Gonzales claims that she did not report the hours that she now alleges constitute unpaid overtime hours worked because she was once told while she was working as the Receptionist that Borderland didn't pay overtime. Gonzales admits implicitly, if not explicitly, that the decision not to report hours allegedly worked was her decision and not based on the direction of her supervisor or other leadership. Whether intentional or not, Gonzales' actions misled her supervisors and Borderland. *See Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). As a matter of law, summary judgment is proper for Borderland.

### B. Borderland is Not Responsible for Paying Overtime for Work that it Did Not Suffer or Permit Gonzales to Perform.

Gonzales has failed to meet her burden of proving that she performed work for which she was not properly compensated under the FLSA. *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986). Even if Gonzales worked more than 40 hours in a workweek,

Borderland did not know and should not have known as such.

The undisputed material facts are that Borderland denied Gonzales' requests to work from home and had a policy against using her personal cell phone at work. (SOF ¶¶ 14, 53-55, 116-118.) Despite this, Gonzales chose to distribute her personal cell phone number and answer her personal cell phone for business-related purposes outside of her scheduled working hours, but not report that time to Elder, Salica, or anyone in Borderland leadership. (*See, e.g.*, SOF ¶¶ 139, 153, 155.) That some of the phone calls came from other Borderland employees outside Gonzales' leadership chain, and who presumably may not have known her scheduled work hours, does not mean that her leadership should have known about the time that she then spent allegedly working. Borderland neither suffered nor permitted Gonzales to work; it did not ask her to use her personal cell phone for such calls and had no knowledge that, for example, she was taking calls and acting in response outside her working hours. Gonzales could have reported those hours she alleges to have worked. Borderland should not be held responsible for Gonzales' decision not to do so. *Forrester*, 646 F.2d at 414.

### III.   CONCLUSION.

The employment relationship contemplated by the FLSA requires two-way communication between employer and employee. Gonzales cannot establish an FLSA claim for unpaid hours where she prevented Borderland from knowing the hours she was allegedly working. Borderland complied with its obligations to Gonzales under the FLSA and respectfully requests that this Court grant its Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 11th day of April, 2022.

**ABBE M. GONCHARSKY, PLLC**

/s/ Abbe M. Goncharsky

By Abbe M. Goncharsky
*Attorney for Defendant*
*Borderland Construction Co., Inc.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Marshall Hunt
Davis Miles McGuire Gardner, PLLC
40 East Rio Salado Pkwy, Suite 425
Tempe, Arizona  85281

Courtney Lowery
Josh Sanford
Sanford Law Firm
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas  72211
*Attorneys for Plaintiffs*

   /s/ Abbe M. Goncharsky